## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

| | |
|---|---|
| **SUSAN MARIE NORTON,** individually and on behalf of all others similarly situated, | Case No. 1:22-cv-01155 |
| *Plaintiff,* | **CLASS ACTION COMPLAINT** |
| *v.* | **DEMAND FOR JURY TRIAL** |
| **MODERN DISTRICT FINANCIAL, LLC**, a Delaware limited liability company, | |
| *Defendant.* | |

## CLASS ACTION COMPLAINT

Plaintiff Susan Marie Norton ("Plaintiff" or "Norton") brings this Class Action Complaint and Demand for Jury Trial against Defendant Modern District Financial, LLC ("Modern District Financial") to stop the Defendant from violating the Telephone Consumer Protection Act by making telemarketing calls without consent to consumers who registered their phone numbers on the National Do Not Call Registry ("DNC") and to consumers who have specifically asked the Defendant to stop calling them. Plaintiff also seeks injunctive and monetary relief for all persons injured by Defendant's conduct. Plaintiff, for this Complaint, alleges as follows upon personal knowledge as to herself and her own acts and experiences, and, as to all other matters, upon information and belief, including investigation conducted by her attorneys.

## PARTIES

1.     Plaintiff Susan Marie Norton is a resident of Lake Ann, Michigan.

2.     Defendant Modern District Financial is a Delaware limited liability company headquartered in Traverse City, Michigan. Defendant Modern District Financial conducts business throughout this District and the U.S.

## JURISDICTION AND VENUE

3.     This Court has Federal question subject matter jurisdiction over this action under 28 U.S.C. § 1331, as the action arises under the Telephone Consumer Protection Act, 47 U.S.C. § 227 ("TCPA").

4.     This Court has personal jurisdiction over the Defendant and the Venue is proper in this District under 28 U.S.C. § 1391(b) because the Defendant resides in this District, and conduct giving rise to this case was directed by the Defendant from and received by the Plaintiff while residing in this District.

## INTRODUCTION

5.     As the Supreme Court recently explained, "Americans passionately disagree about many things. But they are largely united in their disdain for robocalls. The Federal Government receives a staggering number of complaints about robocalls—3.7 million complaints in 2019 alone. The States likewise field a constant barrage of complaints. For nearly 30 years, the people's representatives in Congress

2

have been fighting back." *Barr v. Am. Ass'n of Political Consultants, Inc.*, 140 S. Ct. 2335, 2343 (2020).

6.     The National Do Not Call Registry allows consumers to register their telephone numbers and thereby indicate their desire not to receive telephone solicitations at those numbers. *See* 47 C.F.R. § 64.1200(c)(2).

7.     A listing on the Registry "must be honored indefinitely, or until the registration is cancelled by the consumer or the telephone number is removed by the database administrator." *Id.*

8.     Industry data shows that the number of robocalls made each month increased from 831 million in September 2015 to 4.7 billion in December 2018—a 466% increase in three years.

9.     According to online robocall tracking service "YouMail," 4.3 billion robocalls were placed in June 2022 alone, at a rate of 144.3 million calls per day. www.robocallindex.com (last visited July 7, 2022).

10.     The FCC also has received an increasing number of complaints about unwanted calls, with over 150,000 complaints in 2020, and over 160,000 complaints in 2021. FCC, Consumer Complaint Data Center, www.fcc.gov/consumer-help-center-data.

11.    "Robocalls and telemarketing calls are currently the number one source of consumer complaints at the FCC." Tom Wheeler, *Cutting off Robocalls* (July 22, 2016), statement of FCC chairman.[1]

12.    "The FTC receives more complains about unwanted calls than all other complaints combined." Staff of the Federal Trade Commission's Bureau of Consumer Protection, *In re Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991,* Notice of Proposed Rulemaking, CG Docket No. 02-278, at 2 (2016).[2]

## COMMON ALLEGATIONS

13.    Defendant Modern District Financial is an independent insurance agency that sells Medicare Supplements, Life Insurance, and other insurance products to consumers across the U.S.[3]

14.    Defendant Modern District Financial places telemarketing calls to consumers to solicit their insurance products and/or services, including to phone numbers listed on the National Do Not Call list, like in Plaintiff Norton's case.

15.    To make matters worse, Defendant Modern District Financial continues to call consumers even after they have explicitly told them to stop calling.

---

[1] https://www.fcc.gov/news-events/blog/2016/07/22/cutting-robocalls
[2] https://www.ftc.gov/system/files/documents/advocacy_documents/comment-staff-ftc-bureau-consumer-protection-federal-communications-commission-rules-regulations/160616robocallscomment.pdf
[3] https://www.linkedin.com/company/moderndistrict/about/

16.     For example, in Plaintiff Norton's case, Defendant Modern District Financial placed multiple calls to her DNC registered number, and they continue to call the Plaintiff despite her instructing the Defendant to take her phone number off their calling list.

17.     Defendant Modern District Financial hires sales representatives to place cold calls to consumers to solicit purchase of their insurance products. Many of Defendant's employees have posted reviews about Defendant's cold calling practices, including:

licensed agent (Former Employee) - Traverse City, MI - November 10, 2019

This job is awful. Intended for those who can easily be brainwashed, or "like-minded".

They say no cold calls in the interview, but that's not true. you will call hundreds of numbers from a database of elderly people, ignore everything the elder says, and bully your way into their home, whether they can be helped or not. Some can be helped, which they do with bully tactics.

EVERYTHING about this job/office is scripted. EVERYTHING. If you can stand to call every person over the age of 65 in a given area, and feel no remorse for being rude to whoever answers, you may be able to pull it off and make great money. Never once was it a possibility to talk to clients like they were humans, everything was robotic business.

Partners and agents will all tell you how well they are doing financially, from their fun trips, weekend golf outings, and how great it is to drive a nice car. It is possible, but not without long days, hundreds of phone calls two days a week, and HOURS of driving, all on your dime, for little return in the first few months.

Overall, working here was one of the worst experiences of my life. It will take a special person to be successful, work M-F 9am to 9pm if your goals aren't meant. The only truth spoken in the interview process was that there's a lot of rejection, and the job is difficult. None of these people have work/life balance. Sure, they have weekends, but they're working 70+ hours a week. [4]

---

[4] https://www.indeed.com/cmp/Modern-District-Financial/reviews?start=60

## Door knocking and cold calls

Agent (Former Employee) - Michigan - August 17, 2019

The only appealing part of the job seemed to be the "possibility" of making alot of money. The interviewer went on and on about how good he was and how great his team is.
The job consists of three days of door knocking, two days of cold calls, Saturdays are for classrooms.
Otherwise, their was no job benefits, no 401k, or health insurance options because "oh, you dont need that" (an actual quote from the interviewer when asked)
Also the job is misleading with the title, you are actually applying for the position underneath management trainee, an agent.

Was this review helpful?

Yes  5      No  6                                         ⚑ Report      ⬆ Share



> ✔ **Official response from Modern District Financial**
> August 19, 2019
>
> This isn't a review of our company. This is someone who interviewed with us, and obviously wasn't paying attention. Why do we get a 1 star rating for this? Here are the inaccuracies: 1.) We only work on appointment, and don't door knock for 3 days. We run appointments 3 days per week. 2.) We have 2 office days, and we have several lead types to call from not just "cold calls". 3.) We

5

## Completey unprofessional

New agent (Former Employee) - Traverse City, MI - October 17, 2018

They are not honest with the description of job or income potential.
They rely heavily on cold calls and door knocking. The "marketed leads" are cold calls.
They go out and work for hours on end with no income for the entire day.
And expect you to be a telemarketer two days a week and make cold calls
Extremely competitive office to the point of shaming.

✔ **Pros**
None

✗ **Cons**
Modern district financial

6

---

[5] https://www.indeed.com/cmp/Modern-District-Financial/reviews?start=80
[6] https://www.indeed.com/cmp/Modern-District-Financial/reviews?start=100

Former Employee, less than 1 year

**Avoid at all cost**

Dec 12, 2017 - Insurance Agent in Traverse City, MI

❌ Recommend    ⭕ CEO Approval    ❌ Business Outlook

**Pros**
-Claims 80% of their agents make 56k in their first year, and some make 120k in their first year
-Nice fish tank in the office
-Motivational messages in their office

**Cons**
-Cold calls all day
-Knocking on people's doors cold
-Rely on commissions which your manager will take 50% from you

The company is called American Senior Benefits, they had a scandalous lawsuit and change their name to Modern District Financial. Do your research on the company, their Facebook post have nothing but their owners on the golf course; while the agents are grinding their souls away with cold calls.    7

Sep 30, 2020 - Sales

❌ Recommend    ❌ CEO Approval    ❌ Business Outlook

**Pros**
Potential to make a lot of money

**Cons**
Ridiculous hours, cold calling, rude managers, have to heckle the elderly    8

Mar 12, 2019 - Insurance Agent in Traverse City, MI

⭕ Recommend    ❌ CEO Approval    ✅ Business Outlook

**Pros**
Learn to appreciate a quality position

**Cons**
No benefits, very unstable income, very difficult to leave, endless hours 60+ week, lots of driving with no compensation, endless cold calling. completely unethical practices. The real victims of this company are the suckers who are hired on and stay. By the way the positive reviews are only current employees who are pushed to post on here.

**Advice to Management**
Hire talented managers to train new agents... not successful salesmen    9

---

[7] https://www.glassdoor.com/Reviews/Employee-Review-Modern-District-Financial-RVW18314179.htm
[8] https://www.glassdoor.com/Reviews/Modern-District-Financial-Reviews-E1023136.htm?sort.sortType=OR&sort.ascending=true&filter.iso3Language=eng
[9] *Id.*



**Nicholas Havener** (He/Him)
Sales Engineer

**Financial Advisor**
Modern District Financial · Internship
Apr 2020 - Aug 2020 · 5 mos
Grand Rapids, Michigan, United States

Cold-called hundreds of clients daily with a self confident and persuasive personality. Built loyal relationships with clients while reducing their monthly health insurance payment. Invested client's money into mutual funds or Roth IRA's to reduce financial struggles for the future.

10

18.    Several consumers have posted complaints about receiving similar calls from Defendant Modern District Financials, as received by Plaintiff Norton, including calls received after making clear stop requests to Defendant, for instance:

**Morris D**
⭐☆☆☆☆                                                          06/01/2022

These guys can't take no for an answer. They have repeatedly called and even shown up at our door unannounced. Every time we told them we were happy with our current advisor and to not call again. In nearly every case they ask the name of our current advisory company and the proceed to bad mouth them. This is really a poor way to go about winning customers by not listening to their wishes and then to demean the decisions they have already made. I have no idea if they are a solid company but just judging by the way the go about their business I would question their ethics.

11

**steve v**
⭐☆☆☆☆                                                          04/16/2020

Tried several times to reach out and have them take me off their phone list! They were rude, even laughed when I told them I was fine and not to call. Meanwhile, I get calls about every 3 days and then they hang up when I try to ask them to refrain. Extremely unprofessional and unresponsive to requests.

12



[10] https://www.linkedin.com/in/nicholas-havener-658b451a7/
[11] https://www.bbb.org/us/mi/traverse-city/profile/insurance-services-office/modern-district-financial-0372-38136841/customer-reviews
[12] *Id.*



19.    Defendant Modern District Financial has responded to some of the consumers' complaints acknowledging its practice of calling consumers who are about to turn 65 years, to solicit Medicare and other health insurance plans to them, as in the case of Plaintiff Norton, for instance:

---

[13] Complaint against phone number 231-342-7358, which Defendant also used to call Plaintiff. Report available at:  *https://phonespam.report/for-231-342-7358*



**T/O Senior**

⭐☆☆☆☆

09/20/2021

SENIORS BEWARE: Cold call by one of their agents trying to shove his plan (medicare enrollment) down our throats. He was speaking with my wife and gave the phone to me for clarification of the plan. My wife had no further conversation with him and suddenly we are trapped in a plan that was poorly explained and cannot get out of if until next enrollment period. Fast talker, HARD SELL tactics. I will never have anything else to do with this business regardless of who represents it. When I asked on a later call about hospitalization costs NOT revealed in the initial presentation, he offered to sell us more insurance to cover that cost.



**Modern District Financial Response**

09/22/2021

Mr. ******* --
Modern District Financial does not "cold call", your wife was contacted by one of our agents because she is turning 65 years of age and entering into Medicare. We specialize in helping folks in the community with understanding their Medicare benefits and the many options that are available. We offer and are very skilled in both Medicare Supplements and Medicare Advantage plans. Both options are very thoroughly explained, premiums are offered, the client chooses the options which works best for their budget and needs; and, then the application process is finalized on each company's secure servers and recorded lines.
Modern District Financial has been able to educate and help numerous individuals in retirement and we look forward to protecting many more.
Sincerely,
David T*******
Exec. Administrator



**Customer Response**

09/24/2021

Your agent refused to give us a LETTER OF CANCELLATION when requested. We are being held hostage in this situation. We DID NOT call you so it is considered a COLD CALL in my book.

14

---

14 https://www.bbb.org/us/mi/traverse-city/profile/insurance-services-office/modern-district-financial-0372-38136841/customer-reviews

**Complaint Type:** Problems with Product/Service     **Status:** Answered ⓘ



12/19/2019

Continued harassment to try to sell their Medicare supplement. Staff from their business have come to our home uninvited & been turned away. Since the Medicare Open Enrollment we have received frequent telephone calls after we have requested that they take us off their calling list. We got 3 separate calls today (Dec 3rd) & I requested each time for them NOT to call. My husband & I have our Medicare arrangements through another business & have NEVER requested service from Modern District. Please leave us alone.



**Business Response**                                            02/24/2020

Business Response /* (1000, 13, 2020/02/24) */ Contact Name and Title: David T******* Contact Phone: ********** Contact Email: ********************* In regards to Mrs. ****** ****; Please be assured the Mrs. **** is listed on our DNC list. We are a small, independent outfit affiliated with American Senior Benefits and one of our primary missions is to help educate / enlighten clients about changes to areas that affect their retirement. With a household member turning 65 we, along with other companies, are attempting to inform them of the number of changes to both Medicare and Long Term Care, we tend to focus on providing an opportunity for members in the community to assist them in navigating the many twists and turns along the pathways of retirement; and, however the client decides to use the information is entirely their choice. Each lead provided is unique to the agent and we destroy old leads on a regular basis each office day (Tue / Fri) when our agents call prospective clients. We have our own internal DNC list, our SAN number is up to date with the National Call Registry, and all the numbers that our distributed are scrubbed for DNC - as long as they have been updated. Our protocol is to not distribute the same leads multiple times, and we have implemented a computerized data base which allows a digital record of contact and response with proposed and active clients. Past experience has shown that the paper leads posed difficulties in tracking the frequency and times of contact. Please note there are a number of companies operating in the area with "Senior Benefits" in their company name which could cause some concern of multiple contacts. If you have any further questions or need any information, please do not hesitate to contact me by phone or email. **Consumer Response** /* (3000, 15, 2020/02/28) */ (The consumer indicated he/she DID NOT accept the response from the business.) I received another phone solicitation call from this business last week so apparently they have not removed my number from their list. I want reassurance that I am PERMANENTLY removed from both their phone call lists and the uninvited door-to-door solicitations. I have no interest in using their services. **Business Response** /* (-10, 22, 2020/07/14) */ We have included Ms. **** on our internal Do Not Call List and have posted to all agents to not contact Ms. ****. We at Modern District Financial / American Senior Benefits only want to provide the best possible options and information to our community. David T*******

• 15

## PLAINTIFF NORTON'S ALLEGATIONS

20.     Plaintiff Norton's landline phone number ending in 1369 has been registered on the DNC since September 25, 2005.

21.     Plaintiff Norton uses her landline phone number for personal and residential purposes only.

---

15 *Id.*

22.     Plaintiff Norton has never conducted any business with Defendant Modern District Financial, nor has she given her consent to receive telemarketing calls from or on behalf of Defendant Modern District Financial.

23.     In June 2022, Plaintiff started receiving unsolicited telemarketing calls from Defendant Modern District Financial soliciting assistance in acquiring Medicare benefit plans.

24.     On June 23, 2022, at 7:08 PM, Plaintiff received a call from the phone number 231-342-7358 to her landline. Plaintiff answered the call and spoke to Carlo Knecht from Defendant Modern District Financial who tried to offer Medicare insurance solutions to the Plaintiff. Plaintiff Norton explained that she doesn't need insurance and already has an agent that she's working with, and the call came to an end.[16]

25.     On June 24, 2022, at 3:59 PM, Plaintiff received a call from the phone number 231-278-7410 to her landline. Plaintiff did not answer this call.

26.     Plaintiff received a second call on June 24, 2022, at 5:14 PM, from phone number 231-357-9478. Plaintiff answered this call and spoke to Eric Calvert who identified himself as working for Modern District Financial. Calvert offered

---

[16] On calling this phone number, 231-342-7358, an automated voice system identifies the name Carlo Knecht with Modern District Financial.

12

assistance in finding Medicare solutions to Plaintiff, who again explained that she has no need of getting such services.[17]

27.     Plaintiff received a third call on June 24, 2022, at 5:49 PM, from phone number 231-357-9478. Plaintiff answered this call and spoke to Ashley Urbanus who identified herself as working for Modern District Financial. Like the other employees that Plaintiff spoke to, Urbanus offered assistance in finding Medicare solutions to Plaintiff, who again explained that she has no need of getting such services.[18]

28.     On June 27, 2022, at 5:34 PM, Plaintiff received a call from the phone number 231-278-7410 to her landline. Plaintiff did not answer this call.

29.     Plaintiff received a second call on June 27, 2022, at 6:00 PM, from phone number 231-342-7358. This call was from Carlo Knecht on behalf of Modern District Financial again trying to solicit insurance services to Plaintiff. Plaintiff specifically told Knecht that Modern District Financial needs to stop calling her and stated, "Take me off your calling list."

---

[17] On calling this phone number, 231-357-9478, Eric answers the phone and identifies himself by name.

[18] On calling this phone number, 231-357-9478, an automated voice system identifies the name Ashley Urbanus with Modern District Financial.

30.     Despite her clear stop request, Plaintiff continued to receive unsolicited telemarketing calls from Modern District Financial employees trying to sell Medicare insurance services.

31.     Plaintiff received an unsolicited call on June 28, 2022, at 8:29 PM from the phone number 989-710-1095. Plaintiff did not answer a call but a generic sounding voicemail was left from Michaela Carver who said she was calling from Modern District Financial and was requesting a call back to provide assistance in getting a Medicare insurance quote.

32.     On calling this phone number, 989-710-1095, an automated voice system identifies the name Michaela Carver. No company name is mentioned.

33.     Plaintiff received additional calls from Defendant Modern District Financial employees on:

- June 29, 2022, at 4:47 PM from 231-357-9478, from Eric Calvert;

- June 29, 2022, at 5:50 PM from 989-710-1095, from Michaela Carver;

- July 1, 2022, at 2:30 PM from 989-710-1095, from Michaela Carver;

- July 7, 2022, at 5:05 PM from 231-357-9478, from Eric Calvert;

- July 19, 2022, at 6:25 PM from 989-710-1095, from Michaela Carver;

- July 19, 2022, at 7:19 PM from 989-387-2294, from Devon Rosebrugh;

- July 20, 2022, at 2:37 PM from 231-357-2391, from Ashly Urbanus; and

- July 21, 2022, at 1:08 PM from 231-278-7410. Plaintiff did not answer this call.

34.     Plaintiff made multiple requests for the calls to stop, but the unsolicited telemarketing calls from Modern District Financial employees continued.

35.      Plaintiff Norton never consented to receiving solicitation calls from Defendant Modern District Financial and does not have any existing business relationship with the Defendant.

36.     The unauthorized telephone calls placed by Defendant, as alleged herein, have harmed Plaintiff Norton in the form of annoyance, nuisance, and invasion of privacy, and disturbed the use and enjoyment of her phone, in addition to the wear and tear on the phone's hardware (including the phone's battery) and the consumption of memory on the phone.

37.     Seeking redress for these injuries, Plaintiff Norton, on behalf of herself and a Class of similarly situated individuals, bring suit under the Telephone Consumer Protection Act, 47 U.S.C. § 227, et seq., which prohibits unsolicited telemarketing calls to phone numbers that are registered on the DNC.

## CLASS ALLEGATIONS

38.     Plaintiff Norton brings this action pursuant to Federal Rules of Civil Procedure 23(b)(2) and 23(b)(3) and seek certification of the following Classes:

**<u>Do Not Call Registry Class:</u>** All persons in the United States who from four years prior to the filing of this action through trial (1) Defendant, or an agent calling on behalf of the Defendant, called more than one time, (2) within any 12-month period, (3) where the person's telephone number had been listed on the National Do Not Call Registry for at least thirty days, (4) for substantially the same reason that Defendant called Plaintiff.

**<u>Internal Do Not Call Class:</u>** All persons in the United States who from four years prior to the filing of this action through trial (1) Defendant, or an agent calling on behalf of the Defendant, called more than one time, (2) within any 12-month period, (3) for substantially the same reason that Defendant called Plaintiff, (4) including at least once after the person requested that Defendant or its agent to stop calling.

39.     The following individuals are excluded from the Classes: (1) any Judge or Magistrate presiding over this action and members of their families; (2) Defendant, their subsidiaries, parents, successors, predecessors, and any entity in which either Defendant or their parents have a controlling interest and their current or former employees, officers and directors; (3) Plaintiff's attorneys; (4) persons who properly execute and file a timely request for exclusion from the Classes; (5) the legal representatives, successors or assigns of any such excluded persons; and (6) persons whose claims against the Defendant has been fully and finally adjudicated and/or released. Plaintiff anticipates the need to amend the Class definitions following appropriate discovery.

40.    **Numerosity**: On information and belief, there are hundreds, if not thousands of members of the Classes such that joinder of all members is impracticable.

41.    **Commonality and Predominance**: There are many questions of law and fact common to the claims of the Plaintiff and the Classes, and those questions predominate over any questions that may affect individual members of the Class. Common questions for the Classes include, but are not necessarily limited to the following:

(a)    whether Defendant placed multiple calls to Plaintiff and members of the Do Not Call Registry class without first obtaining consent to make the calls;

(b)    whether Defendant or their agents placed multiple calls to Plaintiff and members of the Internal Do Not Call Class including at least once after the consumer requesting Defendant or their agents to stop calling;

(c)    whether the calls violated the TCPA;

(d)    whether members of the Classes are entitled to treble damages based on the willfulness of Defendant's conduct.

42.    **Adequate Representation**: Plaintiff will fairly and adequately represent and protect the interests of the Classes, and has retained counsel competent and experienced in class actions. Plaintiff has no interests antagonistic to those of

the Classes, and Defendant has no defenses unique to Plaintiff. Plaintiff and her counsel are committed to vigorously prosecuting this action on behalf of the members of the Classes, and have the financial resources to do so. Neither the Plaintiff nor her counsel have any interest adverse to the Classes.

43.     **Appropriateness**: This class action is also appropriate for certification because the Defendant has acted or refused to act on grounds generally applicable to the Classes as a whole, and thereby requiring the Court's imposition of uniform relief to ensure compatible standards of conduct toward the members of the Classes and making final class-wide injunctive relief appropriate. Defendant's business practices apply to and affect the members of the Classes uniformly, and Plaintiff's challenge of those practices hinges on Defendant's conduct with respect to the Classes as a whole, not on facts or law applicable only to the Plaintiff. Additionally, the damages suffered by individual members of the Classes will likely be small relative to the burden and expense of individual prosecution of the complex litigation necessitated by Defendant's actions. Thus, it would be virtually impossible for the members of the Classes to obtain effective relief from Defendant's misconduct on an individual basis. A class action provides the benefits of single adjudication, economies of scale, and comprehensive supervision by a single court.

## <u>FIRST CLAIM FOR RELIEF</u>
**Telephone Consumer Protection Act**
**(Violation of 47 U.S.C. § 227)**
**(On Behalf of Plaintiff Norton and the Do Not Call Registry Class)**

44.     Plaintiff repeats and realleges the prior paragraphs of this Complaint and incorporates them by reference herein.

45.     The TCPA's implementing regulation, 47 C.F.R. § 64.1200(c), provides that "[n]o person or entity shall initiate any telephone solicitation" to "[a] residential telephone subscriber who has registered his or her telephone number on the national do-not-call registry of persons who do not wish to receive telephone solicitations that is maintained by the federal government."

46.     Any "person who has received more than one telephone call within any 12-month period by or on behalf of the same entity in violation of the regulations prescribed under this subsection may" may bring a private action based on a violation of said regulations, which were promulgated to protect telephone subscribers' privacy rights to avoid receiving telephone solicitations to which they object.  47 U.S.C. § 227(c).

47.     Defendant violated 47 C.F.R. § 64.1200(c) by initiating, or causing to be initiated, telephone solicitations to telephone subscribers such as the Plaintiff and the Do Not Call Registry Class members who registered their respective telephone numbers on the National Do Not Call Registry, a listing of persons who do not wish to receive telephone solicitations that is maintained by the federal government.

48.     Defendant violated 47 U.S.C. § 227(c)(5) because Plaintiff and the Do Not Call Registry Class received more than one telephone call in a 12-month period

made by or on behalf of Defendant in violation of 47 C.F.R. § 64.1200, as described above. As a result of Defendant's conduct as alleged herein, Plaintiff and the Do Not Call Registry Class suffered actual damages and, under section 47 U.S.C. § 227(c), are entitled, inter alia, to receive up to $500 in damages for such violations of 47 C.F.R. § 64.1200.

49.     To the extent Defendant's misconduct is determined to be willful and knowing, the Court should, pursuant to 47 U.S.C. § 227(c)(5), treble the amount of statutory damages recoverable by the members of the Do Not Call Registry Class.

**SECOND CLAIM FOR RELIEF**
**Telephone Consumer Protection Act**
**(Violation of 47 U.S.C. § 227)**
**(On Behalf of Plaintiff Norton and the Internal Do Not Call Class)**

50.     Plaintiff repeats and realleges paragraphs 1 through 43 of this Complaint and incorporates them by reference herein.

51.     Under 47 C.F.R. § 64.1200(d), "[n]o person or entity shall initiate any call for telemarketing purposes to a residential telephone subscriber unless such person or entity has instituted procedures for maintaining a list of persons who request not to receive telemarketing calls made by or on behalf of that person or entity. The procedures instituted must meet the following minimum standards:

> (1) Written policy. Persons or entities making calls for telemarketing purposes must have a written policy, available upon demand, for maintaining a do-not-call list.

(2) Training of personnel engaged in telemarketing. Personnel engaged in any aspect of telemarketing must be informed and trained in the existence and use of the do-not-call list.

(3) Recording, disclosure of do-not-call requests. If a person or entity making a call for telemarketing purposes (or on whose behalf such a call is made) receives a request from a residential telephone subscriber not to receive calls from that person or entity, the person or entity must record the request and place the subscriber's name, if provided, and telephone number on the do-not-call list at the time the request is made. Persons or entities making calls for telemarketing purposes (or on whose behalf such calls are made) must honor a residential subscriber's do-not-call request within a reasonable time from the date such request is made. This period may not exceed thirty days from the date of such request. If such requests are recorded or maintained by a party other than the person or entity on whose behalf the telemarketing call is made, the person or entity on whose behalf the telemarketing call is made will be liable for any failures to honor the do-not-call request. A person or entity making a call for telemarketing purposes must obtain a consumer's prior express permission to share or forward the consumer's request not to be called to a party other than the person or entity on whose behalf a telemarketing call is made or an affiliated entity.

(4) Identification of sellers and telemarketers. A person or entity making a call for telemarketing purposes must provide the called party with the name of the individual caller, the name of the person or entity on whose behalf the call is being made, and a telephone number or address at which the person or entity may be contacted. The telephone number provided may not be a 900 number or any other number for which charges exceed local or long distance transmission charges.

(5) Affiliated persons or entities. In the absence of a specific request by the subscriber to the contrary, a residential subscriber's do-not-call request shall apply to the particular business entity making the call (or on whose behalf a call is made), and will not apply to affiliated entities unless the consumer reasonably would expect them to be included given the identification of the caller and the product being advertised.

(6) Maintenance of do-not-call lists. A person or entity making calls for telemarketing purposes must maintain a record of a consumer's request not to receive further telemarketing calls. A do-not-call request must be honored for 5 years from the time the request is made.

52.     Defendant, or an agent calling on behalf of Defendant placed calls to Plaintiff and members of the Internal Do Not Call Class without implementing internal procedures for maintaining a list of persons who request not to be called by the entity and/or by implementing procedures that do not meet the minimum requirements to allow the Defendant or its agent to initiate telemarketing calls.

53.     The TCPA provides that any "person who has received more than one telephone call within any 12-month period by or on behalf of the same entity in violation of the regulations prescribed under this subsection may" bring a private action based on a violation of said regulations, which were promulgated to protect telephone subscribers' privacy rights to avoid receiving telephone solicitations to which they object. 47 U.S.C. § 227(c)(5).

54.     The Defendant has, therefore, violated 47 U.S.C. § 227(c)(5). As a result of Defendant's conduct, Plaintiff and the other members of the Internal Do Not Call Class are each entitled to up to $1,500 per violation.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff Norton individually and on behalf of the Classes, prays for the following relief:

a)   An order certifying this case as a class action on behalf of the Classes as defined above; appointing Plaintiff as the representative of the Classes; and appointing her attorneys as Class Counsel;

b)   An award of damages and costs;

c)   An order declaring that Defendant's actions, as set out above, violate the TCPA;

d)   An injunction requiring Defendant to cease all unsolicited calling activity, and to otherwise protect the interests of the Classes; and

e)   Such further and other relief as the Court deems just and proper.


**JURY DEMAND**

Plaintiff Norton requests a jury trial.


DATED this 6th day of December, 2022.


**SUSAN MARIE NORTON**, individually and on behalf of all others similarly situated,


By: /s/ *C. Nicholas Curcio*
C. Nicholas Curcio
CURCIO LAW FIRM, PLC
16905 Birchview Drive
Nunica, MI 49448
Telephone: (616) 430-2201
ncurcio@curciofirm.com

Avi R. Kaufman*
kaufman@kaufmanpa.com
KAUFMAN P.A.
237 South Dixie Highway, Floor 4
Coral Gables, FL 33133
Telephone: (305) 469-5881

*Attorneys for Plaintiff and the putative
Classes*

*\*Pro Hac Vice Motion forthcoming*